IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MING REN, et al.                    *

            Plaintiffs      *

            vs.             *    CIVIL ACTION NO. MJG-15-1242

XIAO MING CAO, et al.               *

            Defendants      *

*        *        *        *        *        *        *        *        *

MEMORANDUM AND ORDER RE: DEFENDANTS RUSSEL AUTOPARK AND STEVE
TRAVERS' MOTION TO DISMISS THE AMENDED COMPLAINT

The Court has before it Defendants Russel Autopark and
Steve Travers' (collectively, "Dealership Defendants") Motion to
Dismiss the Amended Complaint [ECF No. 15] and the materials
submitted relating thereto.  The Court finds a hearing
unnecessary.

I.   BACKGROUND

Plaintiffs are five citizens of the People's Republic of
China who allege that they were victims of fraudulent schemes
orchestrated by Xiao Ming Cao ("Cao"), a Chinese-born American
citizen living in Owings Mills, Maryland.

The instant motion pertains to claims by three of the
Plaintiffs, Ming Ren, her husband, Binwei Liu, and their
daughter, Jinying Liu (collectively, the "Liu Plaintiffs").

In or about October 2013, Cao met with Mr. Liu in Washington D.C. and offered, among other things, to sell a car to his daughter, Ms. Jinying Liu ("Ms. Liu") for her use while she attended university in the United States.

On July 31, 2013, Cao leased[1] a Toyota RAV4 from R&H Motor Cars.[2]  Steve Travers, the R & H General Sales Manager, was the dealership signatory on the lease agreement.  In October 2013, after meeting with Mr. Liu, Cao sent the Liu Plaintiffs a photograph of the RAV4 and offered to sell it to them for $19,000 plus an additional $500 delivery fee.  The Liu Plaintiffs accepted and transferred the $19,500, as instructed, to a Chinese bank account owned by Cao's brother-in-law.  Cao's brother-in-law then wired the funds to Cao.

Cao delivered the car to Ms. Liu but did not transfer title of the vehicle to Ms. Jinying Liu since, of course, the title had not been transferred from the lessor name.[3]

By the end of 2013, the Plaintiffs had transferred in excess of $125,000 to Cao based on certain promises that were

---

[1]   The Complaint refers to the transaction as a lease "for a total of $10,350.00."

[2]   R&H Motor Cars is an affiliate of Russel Autopark, along with MileOne Automotive and Mercedes Benz of Owings Mills.

[3]   The Liu Plaintiffs discovered this fact in late March of 2014, when Ms. Liu was in an accident, but Mr. Cao assured them the title transfer would occur soon, as they had agreed.

not honored by Cao.  These funds were used by Cao to purchase several high-end cars.

On December 19, 2014, Cao demanded return to him of the RAV4 that was being used by Ms. Liu who believed that she owned the car although title had not yet been transferred to her.  On December 20, 2014, the Liu Plaintiffs threatened to file a lawsuit against Cao if their money (for the car and other schemes) was not returned.  Cao then phoned Ms. Liu and threatened to hurt or kill her if any suit was filed against him.

Thereafter, Cao set in motion the repossession of the RAV4. He evidently contacted Steve Travers, who forwarded information regarding the RAV4 and Ms. Liu[4] to an employee at Atlas Creditor Services ("Atlas"), an automotive repossession company, on December 22, 2014.  That same day, an "order to repossess" was sent by Travers to Atlas, listing Ms. Liu as the "debtor" and "borrower," despite the fact that her name did not appear anywhere on the lease agreement or title.  He later sent a set of keys to the RAV4 to Atlas so the car could be repossessed. In the middle of the night on January 21, 2015, the car was repossessed over Ms. Liu's protestations.

---

[4]     The information included a copy of the lease agreement, listing Cao as the sole lessee, a scan of Ms. Liu's driver's license and a statement that the repossession may have to wait until she returned to the United States on January 18, 2015.

Plaintiffs filed suit against Cao, the Dealership Defendants, and others on April 29, 2015.  On June 10, 2015, Plaintiffs filed the Amended Complaint [ECF No. 7] asserting against the Dealership Defendants[5] claims pursuant to the Racketeer Influenced and Corrupt Practices Act ("RICO").  By the instant motion, the Dealership Defendants seek dismissal of all claims against them.

## II.  LEGAL STANDARD

### a.  Rule 12(b)(6)

A motion to dismiss filed pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint.  A complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted). When evaluating a 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff. However, conclusory statements or "a formulaic recitation of the elements of a cause of action will not [suffice]."  Id.  A complaint must allege sufficient facts "to cross 'the line

---

[5]     And other defendants.

4

between possibility and plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557).

Inquiry into whether a complaint states a plausible claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Twombly, 550 U.S. at 557).  Thus, if "the well-pleaded facts [contained within a complaint] do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (alteration in original)).

Taking Plaintiffs' factual allegations as true, the Court shall consider the adequacy of the Complaint.

b.   Rule 9(b)

Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  To plead fraud with particularity means to specifically allege in the complaint facts regarding the circumstances of the fraud, namely the time, place, source, and contents of the fraudulent misrepresentation, and also what was obtained thereby.  Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999).

5

"A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts."  Id.

## III.  DISCUSSION

The sole claim brought by the Plaintiffs against the Dealership Defendants is for the violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.

### A.   RICO Elements

Congress passed RICO "to provide society with a powerful response to the dangers of organized crime."  US Airline Pilots Ass'n v. Awappa, LLC, 615 F.3d 312, 317 (4th Cir. 2010).  RICO provides "'a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity.'"  Id. (quoting Gamboa v. Velez, 457 F.3d 703, 705 (7th Cir. 2006)).  As such, "this circuit will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims."  Flip Mortg. Corp. v. McElhone, 841 F.2d 531, 538 (4th Cir. 1988).  Rather, "RICO treatment is reserved for conduct whose scope and persistence pose a special threat to social well-being." Awappa, 615 F.3d at 317.

To state a claim under RICO, a plaintiff must properly allege (1) conduct (2) of an enterprise (3) that demonstrates a pattern (4) of racketeering activity.  See Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1986).

B.    Adequacy of the Amended Complaint

Thus, to survive dismissal, the Amended Complaint must adequately  allege a plausible claim that the Dealership Defendants:

- engaged in fraudulent conduct,
- that was conduct of an enterprise,
- demonstrating a pattern
- of racketeering activity.

The Complaint does not adequately please these elements of a RICO claim.

1.    Fraudulent Conduct

Plaintiffs have failed to satisfy Rule 9(b)'s heightened pleading standard with regard to the RICO claims.  See, e.g., Superior Bank, F.S.B. v. Tandem Nat. Mortgage, Inc., 197 F. Supp. 2d 298, 326 (D. Md. 2000) ("It is well established that Rule 9(b) applies to RICO claims where the alleged predicate acts involved fraud.").

Because the predicate acts upon which the RICO claims are founded — i.e. Defendant Cao's misrepresentations to the Plaintiffs by telephone and email made with the intent to

7

defraud the Plaintiffs —— amount to wire fraud,[6] the RICO claims
are subject to Rule 9(b)'s heightened pleading standard.  See,
e.g., Bhari Info. Tech. Sys. Private Ltd. v. Sriram, 984 F.
Supp. 2d 498, 505 (D. Md. 2013) ("When mail and wire fraud are
asserted as the predicate acts for a civil RICO claim, the
standards of Rule 9(b) apply.").

Therefore, to adequately plead the Dealership Defendant's
involvement in any violation of RICO, Plaintiffs must set forth
the Dealership Defendants' involvement in the fraudulent scheme
with particularity.[7]  Plaintiffs have not done so.  Indeed,
Plaintiffs allege no more than that the Dealership Defendants
asserted the rights of the legal owner of the RAV4 without
participating knowingly in Cao's fraudulent scheme.

---

[6]   18 U.S.C. § 1343 provides, in pertinent part:

> Whoever, having devised or intending to devise any
> scheme or artifice to defraud, or for obtaining
> money or property by means of false or fraudulent
> pretenses, representations, or promises, transmits
> or causes to be transmitted by means of wire,
> radio, or television communication in interstate
> or foreign commerce, any writings, signs, signals,
> pictures, or sounds for the purpose of executing
> such scheme or artifice, shall be fined under this
> title . . . .

See also U.S. v. Harris, 576 F. App'x 265, 271 (4th
Cir. 2014) (observing that an email communication used
in furtherance of a scheme to defraud will constitute
wire fraud, even if the particular email does not
itself communicate a falsehood).

[7]   See supra Part II.b.

Plaintiffs' conclusory allegations that the Dealership Defendants knew of Cao's allegedly fraudulent schemes sufficient [Compl. ¶ 27, 28, 63, 64, 88] are insufficient.  Rule 9(b), while it allows certain conditions of a person's mind to be alleged generally rather than with particularity, "does not require courts to credit a complaint's conclusory statements without reference to its factual context."  Ashcroft v. Iqbal, 556 U.S. 662, 665 (2009).

### 2.   Conduct of an Enterprise Demonstrating a Pattern

For RICO purposes, an "enterprise" is "an ongoing organization, formal or informal, in which the various associates function as a continuing unit."  Grant v. Shapiro & Burson, LLP, 871 F. Supp. 2d 462, 473 (D. Md. 2012) (internal quotation marks omitted).  A "pattern" of racketeering activity requires "at least two acts of racketeering activity" and a plaintiff must show that "the predicate acts are related and that they amount to or pose a threat of continued criminal activity."  GE Inv. Private Placement Partners II v. Parker, 247 F.3d 543, 549 (4th Cir. 2001).  "Racketeering activity" includes numerous felonious enterprises, including acts or threats involving wire fraud, money laundering, extortion, kidnapping, murder, arson, bribery, and numerous others.  18 U.S.C. § 1961(1).

The Court will assume, without finding, that the Complaint adequately asserts that the Dealership Defendants can be viewed as constituting an enterprise that effected the repossession of the RAV4.  Nevertheless, even if — contrary to the Court's finding — Plaintiffs adequately alleged that the Dealership Defendants' actions constituted a racketeering activity, there is nothing whatsoever to support a claim that this incident was part of a pattern[8] of racketeering activity.

Plaintiffs' contention that the Dealership Defendants engaged in money laundering with Defendant Cao is baseless. According to Plaintiffs, these Defendants' involvement in a money laundering scheme with Defendant Cao is demonstrated by Cao's "purchasing, selling, and re-titling [of] luxury automobiles through Russel Autopark." Compl. ¶ 28.  In support of this allegation, Plaintiffs list eleven cars that Cao purchased between August 2013 and February 2015 in their Opposition to the instant motion to dismiss. [ECF No. 29] at 11.

However, the money laundering statute, 18 U.S.C. § 1957, prohibits "knowingly engag[ing] or attempt[ing] to engage in a

---

[8]    See, e.g., Whitney, Bradley & Brown, Inc. v. Kammermann, 436 F. App'x 257 (4th Cir. 2011) (Fourteen predicate acts over a twelve month period were insufficient to state a RICO claim); GE Inv. Private Placement Partners II v. Parker, 247 F.3d 543, 550–51 (4th Cir. 2001) (a seventeen-month pattern of fraud did not "present the type of persistent, long-term fraudulent conduct" RICO aimed to combat); Flip Mortg. Corp. v. McElhone, 841 F.2d 531, 538 (4th Cir. 1988) (no pattern of criminal activity for conduct taking place over seven years).

monetary transaction in criminally derived property of a value greater than $10,000." 18 U.S.C. § 1957. Plaintiffs do not adequately, if at all, present a plausible factual basis for their contention. Plaintiffs merely allege that Cao bought numerous cars with the money he took from Plaintiffs. Plaintiffs do not even allege that he bought any of these cars from the Dealership Defendants, other than the RAV4.

Indeed, Plaintiffs allegations regarding the Dealership Defendants' knowing participation in Cao's fraud are internally inconsistent. For example, Plaintiffs allege that Mr. Travers was aware of Defendant Cao's intent to rent the RAV4 and fraudulently purport to sell it to Ms. Liu.[9] However, Plaintiffs allege that Cao leased the RAV4 on July 31, 2013 (¶ 63), contacted the Liu Plaintiffs for the first time in August 2013 (¶ 59), and offered to sell them the car on October 5, 2013 (¶¶ 60-61).

IV. CONCLUSION

For the foregoing reasons:

    1.    Defendants Russel Autopark and Steve Travers'
        Motion to Dismiss the Amended Complaint [ECF No.
        15] is GRANTED and all claims against them are
        DISMISSED WITH PREJUDICE.

---

[9]    See Am. Compl. [ECF No. 7] ¶ 88(B) ("Mr. Travers conspired with Defendant Cao in leasing the Toyota RAV4 to him through Russel Autopark in order to further the fraudulent sale of the vehicle to Ms. Liu, with the full knowledge that Defendant Cao has no ownership interest in the vehicle.").

    2.    The case shall proceed on Plaintiffs' claims against the remaining defendants.

SO ORDERED, on <u>Friday, October 16, 2015</u>.


_____/s/_____
Marvin J. Garbis
United States District Judge
